No. 23-2103

_____

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

JENNIFER L. BECKETT-LYNN,
Individually, and as Personal Representative
of the Estate of Keith Lynn,
*Plaintiff-Appellant*

v.

UNITED STATES OF AMERICA,
*Defendant-Appellee*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

_____

## BRIEF OF APPELLANT
## (CORRECTED)

_____

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863
jason@luck.law

Stephen F. DeAntonio
DeANTONIO LAW FIRM, LLC
P.O. Box 30069
Charleston, SC 29417
843.577.8080
sdeantonio@deanlawfirm.com

Paul E. Tinkler
William P. Tinkler
TINKLER LAW FIRM, LLC
P.O. Box 31813
Charleston, SC 29417
843.853.5203
paultinkler@tinklerlaw.com
williamtinkler@tinklerlaw.com

*Counsel for Plaintiff-Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-2103__      Caption: __Jennifer L. Beckett-Lynn v. USA__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Jennifer L. Beckett-Lynn, individually, and as Personal Representative of the Estate of Keith Lynn__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                             ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                 ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?        ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)        ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?        ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?        ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _/s/ Jason Scott Luck_____        Date: _____02/20/2024____

Counsel for: _Appellant_____

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................i

TABLE OF CONTENTS ................................................................... iii

TABLE OF AUTHORITIES ...............................................................iv

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF ISSUES .................................................................2

STATEMENT OF THE CASE .............................................................3

STANDARD OF REVIEW .................................................................8

    I.    Summary Judgment ..............................................................8

    II.   Medical Malpractice ............................................................9

SUMMARY OF ARGUMENT ...........................................................12

ARGUMENT ................................................................................14

    I.    The Lynns presented the District Court with a prima facie case of medical malpractice that must be considered by the trier of fact. .............14

        A.    The District Court improperly resolved a disputed material fact regarding the presence of necrotizing fasciitis in Keith Lynn's right leg. ........................................................................16

        B.    The District Court made an impermissible determination of Dr. Jacobs' credibility. ..................................................19

        C.    The District Court improperly determined the standard of care applicable in this lawsuit. ..............................................23

    II.   The Lynns were prejudiced by Respondent's unauthorized *ex parte* communication to the District Court of its proposed findings of fact and conclusions of law. .......................................................24

CONCLUSION ............................................................................27

STATEMENT REGARDING ORAL ARGUMENT ...................................27

CERTIFICATE OF COMPLIANCE ....................................................29

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Adickes v. SH Kress & Co.*,
  398 U.S. 144 (1970) ...................................................22, 23

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................8, 9

*Carter v. Fleming*,
  879 F.3d 132 (4th Cir. 2018) ...............................................8

*Creekmore v. Maryview Hosp.*,
  662 F.3d 686 (4th Cir. 2011) ..............................................20

*Davis v. United States*,
  No. 5:10-cv-00384, 2011 WL 3882272
  (S.D.W.Va. Order dated Sept. 2, 2011) ............................20

*Fessler v. Int'l Bus. Mach. Corp.*,
  959 F.3d 146 (4th Cir. 2020) ..............................................27

*Follmer v. Pro Sports, Inc.*,
  No. 2:22-cv-743-RMG, 2023 WL 3964029
  (D.S.C. Order dated June 12, 2023) ...................................20

*In re Pella Corp. Architect & Designer Series Windows
  Mktg., Sales Practices & Prods. Liab. Litig.*,
  214 F. Supp. 3d 478 (D.S.C. 2016) .......................................5

*Maron v. United States*,
  126 F.3d 317 (4th Cir. 1997) ...............................................9

*Martin v. Duffy*,
  977 F.3d 294 (4th Cir. 2020) ...............................................8

*Miller v. Leathers*,
  913 F.2d 1085 (4th Cir. 1990) .............................................9

*Poller v. Columbia Broadcasting*,
  368 U. S. 464 (1962) .........................................................22

*Raplee v. United States*,
  842 F.3d 328 (4th Cir. 2016) ...........................................9, 10

*Russell v. Microdyne Corp.*,
   65 F.3d 1229 (4th Cir. 1995) .................................................................9

*Sosebee v. Murphy*,
   797 F.2d 179 (4th Cir. 1986) ..........................................................9, 17

*Tripiciano v. Hale*,
   No. 7:13cv00254, 2014 WL 1653073
   (W.D. Va. Order dated Apr. 23, 2014) ...............................................21

*Westberry v. Gislaved Gummi AB*,
   178 F.3d 257 (4th Cir. 1999) ...............................................................20

*Yates v. Terry*,
   817 F.3d 877 (4th Cir. 2016) .................................................................9

**FEDERAL RULES**

Fed. Code of Jud. Conduct, Canon 3 ................................................25, 26

Fed. R. Civ. P. 56 ...........................................................................*passim*

Fed. R. Evid. 602 .....................................................................................19

Local Civ. Rule 7.10 (D.S.C.) .........................................................24, 25

Local Civ. Rule 26.05 (D.S.C.) ..............................................................25

**FEDERAL STATUTES**

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 2674 .......................................................................................9

**STATE CASES**

*Baughman v. Am. Tel. & Tel. Co.*,
   306 S.C. 101, 410 S.E.2d 537 (1991) ..................................................11

*Brouwer v. Sisters of Charity Providence Hosps.*,
   409 S.C. 514, 763 S.E.2d 200 (2014) ..................................................23

*Creed v. City of Columbia*,
   310 S.C. 342, 426 S.E.2d 785 (1993) ..................................................21

*Gooding v. St. Francis Xavier Hosp.*,
   326 S.C. 248, 487 S.E.2d 596 (1997) ...........................................10, 21

*Hoard ex rel. Hoard v. Roper Hosp., Inc.*,
 387 S.C. 539, 694 S.E.2d 1 (2010)......................................................10

*Lee v. Suess*,
 318 S.C. 283, 457 S.E.2d 344 (1995).................................................20

*Martasin v. Hilton Head Health System*,
 364 S.C. 430, 613 S.E.2d 795 (Ct. App. 2005)..................................11

*McCourt v. Abernathy*,
 318 S.C. 301, 457 S.E.2d 603 (1995).................................................23

*State v. Schumpert*,
 312 S.C. 502, 435 S.E.2d 859 (1993).................................................20

## STATE RULES

Rule 3.5, RPC, Rule 407, SCACR ........................................................25

## OTHER AUTHORITIES

Morten Tange Kristensen, *et al.*, *Very low survival rates after
 non-traumatic lower limb amputation in a consecutive
 series: what to do?* 14 INTERACTIVE CARDIOVASCULAR AND
 THORACIC SURGERY 543-547 (May 2012) ..........................................7

## JURISDICTIONAL STATEMENT

This is an appeal of a district court's orders awarding summary judgment and denying a motion to reconsider. The District Court granted summary judgment on April 4, 2023, and denied a motion to reconsider that decision on August 24, 2023. Appellant timely filed her notice of appeal on October 20, 2023. This Court's jurisdiction rests on 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

I.  Whether the District Court erred in ordering summary judgment in favor of the Respondent, when said order:

    (a)  weighed the parties' experts' testimony and resolved conflicts between said testimony,

    (b)  considered and discounted the credibility of Appellant's expert witness, and

    (c)  decided the relevant medical standard of care,

all of which are issues for the trier of fact to decide.

II. Was the Respondent's *ex parte* submission of its proposed pretrial findings of fact and conclusions of law unauthorized and unfairly prejudicial?

## STATEMENT OF THE CASE

This is an appeal of premature summary judgment in a medical malpractice case. The malpractice arose from an unnecessary leg amputation at the Department of Veterans Affairs (VA) hospital in Charleston, South Carolina. The Appellant is Jennifer L. Beckett-Lynn, individually and as Personal Representative of the Estate of Keith Lynn, her husband. Because this action was brought under the Federal Tort Claims Act (FTCA), the Respondent is the United States of America.

Due to Keith Lynn's approximately seven and one-half years of service with, and honorable discharge from, the United States Navy, he was receiving medical treatment from the VA. (JA 6, 232). In the months leading up to the unnecessary amputation of his leg, "Mr. Lynn was being followed by the podiatry service at the [VA] Medical Center for a diagnosis of Charcot's joint disease." (JA 10, 232). When Keith Lynn presented to the VA on January 15, 2019, a VA medical provider interpreted a CT scan as demonstrating evidence of advanced chronic osteomyelitis, a condition which had not been previously diagnosed. (JA 10-11, 203, 225, 229-230, 232). Mr. Lynn returned to the VA emergency department later that day, requesting further evaluation. (JA 226, 228). Though another VA provider offered a provisional diagnosis of necrotizing fasciitis, the VA did not perform a bone biopsy or perform any pathology work to confirm this provisional/presumptive diagnosis, or the diagnosis of osteomyelitis. (JA 141-146, 195-196, 227). Nevertheless, on January

17, 2019, the VA amputated Keith Lynn's right leg below the knee. (JA 232). Mr. Lynn's condition did not improve after the amputation, leading to an above-the-knee revision surgery (*i.e.*, another amputation) in June of 2019. (JA 204, 232).

Suspicious of the rapid chain of events leading to amputation, the Lynns gave notice of their claim to the VA by a Standard Form 95s (SF-95) dated October 4, 2019, complaining that a failed diagnosis led to the unnecessary amputation of Keith Lynn's right leg. (JA 7, 118-121). The VA never formally responded to their claim. (JA 7).

On December 9, 2020, the Lynns filed this action claiming medical negligence under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* (FTCA). (JA 6-9). Respondent answered the complaint on February 12, 2021. (JA 2). The parties engaged in discovery, including the depositions of the Lynns' expert Dr. Allen Mark Jacobs and VA physician Dr. Thomas E. Brothers, who supervised Mr. Lynn's amputation. On May 2, 2022, Respondent filed a motion *in limine* seeking to exclude Dr. Jacobs as an expert witness, arguing, *inter alia*, that his training as podiatrist was not legally sufficient to opine upon the standard of care relevant to Mr. Lynn's amputation. (JA 3, 188-190).

On June 3, 2022, the District Court scheduled this matter for an August 15, 2022, bench trial. (JA 3-4, 179-180). Due to an issue with one of Respondent's experts, on June 30, 2022, the parties jointly moved to continue this trial. On July 7,

2022, the District Court granted this motion, and on July 25, 2022, it rescheduled trial for November 14, 2022. (JA 4, 181-182).

On August 15, 2022, the District Court denied Respondents' motion *in limine*. The District Court held:

> Defendant does not challenge Dr. Jacobs's more than 40 years of experience as a podiatrist and there is nothing in the record to suggest the conditions presented by Mr. Lynn are not treated by a podiatrist. While the Court notes that "an expert witness may not offer an opinion where the subject matter goes beyond the witness's area of expertise[,]" the record is devoid of these impediments. In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig., 214 F. Supp. 3d [478, 496 (D.S.C. 2016)]. Given the record before the Court at this time, the Court finds that Dr. Jacobs has satisfactory knowledge, skill, experience, training, or education on the issue for which the opinion is proffered; and therefore, denies Defendant's Motion *In Limine* to the extent it seeks to limit or exclude Dr. Jacobs's proffered testimony based on his qualifications.

(JA 189-190).

On November 11, 2022, an illness required the Lynns' counsel to make an emergency motion to continue the November 14, 2022, trial. (JA 4). The District Court granted this motion on November 14, 2022. (JA 191-192). However, this order also, pursuant to Fed R. Civ. P. 56(f), requested the parties brief the issue of proximate cause.[1] (JA 191-192). The parties then presented the District Court with argument and evidence via written submission.

---

[1] The deadline for the parties to file dispositive motions was May 1, 2022. (JA 3).

During this briefing process, the Lynns' counsel discovered that in early November of 2022, the Respondent's counsel had submitted its pretrial brief and proposed findings of fact and conclusions of law to the District Court without copying opposing counsel. (JA 219). The Lynns' counsel notified the District Court of this *ex parte* communication on December 1, 2022, but the District Court took no action at that time. (JA 219).

On February 10, 2023, the District Court scheduled trial for May 9, 2023. (JA 4). However, on April 4, 2023, the District Court abruptly changed course and issued an order awarding summary judgment for the Respondent on the issue of proximate cause. (JA 231-242). According to the District Court's order, there was no genuine issue of material fact as to probable cause for Keith Lynn's unnecessary amputation because the Lynns had not adequately rebutted the declarations and transcripts of Respondent's experts and Dr. Jacobs (the Lynns' expert) was unable to testify as to the standard of care for a vascular surgeon. (JA 240-242).

The Lynns moved for the reconsideration of this order, noting the District Court's decision weighed evidence, conflicted with its order on Respondent's motion *in limine*, and appeared to be influenced by the Respondent's unauthorized *ex parte* communication of its proposed findings and conclusions. (JA 5). On August 24, 2023, the District Court denied the Lynns' motion to reconsider. (JA 287-290).

Keith Lynn died on October 12, 2023.[2] On December 1, 2023, the Dorchester County, South Carolina, Probate Court appointed Jennifer L. Beckett-Lynn as Personal Representative of his estate (No. 2023-ES-18-00731). On February 6, 2024, this Court substituted Jennifer L. Beckett-Lynn, as Personal Representative, for Keith Lynn in this appeal.

---

[2] The one-year mortality rate for persons after a below-the-knee amputation was 33.7% in a pooled analysis of 61 studies representing 36,037 patients who underwent non-traumatic major lower extremity amputation. Morten Tange Kristensen, *et al.*, *Very low survival rates after non-traumatic lower limb amputation in a consecutive series: what to do?* 14 INTERACTIVE CARDIOVASCULAR AND THORACIC SURGERY 543-547 (May 2012) *available at* https://academic.oup.com/icvts/article/14/5/543/746325 (last visited January 24, 2024). The five-year mortality rate was 64.4% in the same pooled analysis. *Id.*

## STANDARD OF REVIEW

### I.      Summary Judgment

"[This Court reviews] a district court's decision to grant summary judgment de novo…viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (internal quotation marks omitted). "Summary judgment is only appropriate when, viewing the facts in th[is] light…'there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law.'" *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). The relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). An "otherwise properly supported motion for summary judgment" will not be defeated by the existence of some factual dispute; rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 247-48. All that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Id.* at 249.

It is well-settled that when deciding whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The role of the court is not 'to weigh the evidence and determine the truth of the matter' but rather 'to determine whether there is a genuine issue for trial.'" *Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016) (quoting *Anderson*, 477 U.S. at 249). The court must not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986); *Russell v. Microdyne Corp.*, 65 F.3d 1229,1239 (4th Cir. 1995); *see also Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (The non-moving party is entitled to have the credibility of all his evidence presumed.).

## II.    **Medical Malpractice**

This is a medical malpractice action under the Federal Tort Claims Act (FTCA). The FTCA is a limited waiver of sovereign immunity that empowers litigants to bring certain tort claims against the United States for harms caused by federal employees acting within the scope of their employment. *Raplee v. United States*, 842 F.3d 328, 331 (4th Cir. 2016); *Maron v. United States*, 126 F.3d 317, 321-22 (4th Cir. 1997). Because the FTCA provides that "[t]he United States shall be liable …in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, the courts determine liability by applying the

substantive tort law of the state where the alleged negligence occurred, *Raplee*, 842

F.3d at 331.

> A plaintiff alleging medical malpractice [under South Carolina law]
> must provide evidence showing: (1) the generally recognized and
> accepted practices and procedures that would be followed by the
> average, competent physician in the defendant's field of medicine
> under the same or similar circumstances, and (2) the defendant departed
> from the recognized and generally accepted standards…Additionally,
> the plaintiff must demonstrate the defendant's departure from such
> generally recognized practices and procedures proximately caused the
> plaintiff's alleged injuries and damages…

*Hoard ex rel. Hoard v. Roper Hosp., Inc.*, 387 S.C. 539, 546, 694 S.E.2d 1, 4-5

(2010) (citations removed). "[U]nless the subject is a matter of common knowledge,

the plaintiff must use expert testimony to establish both the standard of care and the

defendant's failure to conform to that standard." *Gooding v. St. Francis Xavier*

*Hosp.*, 326 S.C. 248, 254, 487 S.E.2d 596, 599 (1997). If expert testimony is the

only evidence of proximate cause, the testimony must provide a "significant causal

link…rather than a tenuous and hypothetical connection." *Hoard*, 387 S.C. at 546-

47, 694 S.E.2d at 5. "When one relies solely upon the opinion of medical experts to

establish a causal connection between the alleged negligence and the injury, the

experts must, with reasonable certainty, state that in their professional opinion, the

injuries complained of most probably resulted from the defendant's negligence." *Id.*

at 546, 694 S.E.2d at 5 (quotation marks omitted). However, a testifying expert is

not required to use the words "most probably" for the evidence to meet the test.

*Martasin v. Hilton Head Health System*, 364 S.C. 430, 438, 613 S.E.2d 795, 800 (Ct. App. 2005); *see also Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 111, 410 S.E.2d 537, 543 (1991) ("It is sufficient that the testimony is such as to judicially impress that the opinion…represents his professional judgment as to the most likely one among the possible causes…") (alterations in original) (internal quotation marks omitted).

## SUMMARY OF ARGUMENT

After Keith Lynn presented at the VA twice in one day complaining of his leg, the VA rushed him, without sufficient investigation, to an amputation he did not need. As a result, Keith Lynn's right leg was amputated below the knee on January 17, 2019, and what remained of his leg was subjected to further amputation roughly six months later. The VA's reckless rush to amputation is medical malpractice.

The Lynns' expert established the applicable standard of care demanded that the VA conduct a bone biopsy or perform pathology work before removing a limb. It is undisputed the VA did not perform any of these procedures. Unsurprisingly, Respondent has presented affidavits/declarations opining the opposite of the Lynns' position. With this proof at hand, it was the mandate of the District Court to observe these witnesses at trial, where it can scrutinize the witnesses' weight and credibility during direct and cross-examination. Instead, the District Court weighed the evidence and the credibility of the parties' witnesses and granted summary judgment for the Respondent. The District Court's rush to judgment was reversible error.

Additionally, circumstantial evidence shows the District Court's decision to grant summary judgment was based, at least in part, on the Respondent's improper *ex parte* submission of its pre-trial findings of fact and conclusions of law. Though the Lynns pointed out the impropriety of this communication, the District Court did

not address it until eight months later, after it had already granted summary judgment

for the Respondent. This failure to act was also reversible error.

## ARGUMENT

**I.    The Lynns presented the District Court with a prima facie case of medical malpractice that must be considered by the trier of fact.**

The Lynns' expert is Allen Mark Jacobs, DPM, FACFAS, FAPWH. Dr. Jacobs served as "assistant director of VA services for the Veterans Administration in Washington, D.C. for podiatry services". (JA 217). "[Dr. Jacobs'] career has been devoted to saving the lower extremities of patients." (JA 217). Dr. Jacobs possesses "experience greater than 40 years treating patients such as Mr. Lynn who suffers from diabetes, neuropathy and Charcot joint disease", and he is "frequently consulted by other specialists, including emergency room physicians and surgeons, on questions involving potential amputation of lower limbs." (JA 12, 217). On August 15, 2022, the District Court found that Dr. Jacobs was qualified as an expert to offer an opinion "that the medical evidence supports Mr. Lynn's diagnosis of Charcot joint disease and that the VA's providers departed from the standard of care in urgently removing Mr. Lynn's right leg when 'there was never any direct evidence demonstrating osteomyelitis.'" (JA 189-190).

Dr. Jacobs' declaration and deposition testimony establish the relevant standard of care for podiatric care, its breach, and how this breach proximately caused Mr. Lynn's injuries. Dr. Jacobs performed a review of Keith Lynn's medical records from the VA and opined "with a reasonable degree of medical certainty" that "[t]he medical records indicate clinical signs, symptoms, and radiographic and

imaging changes consistent with Charcot's joint disease" and that "there was never any direct evidence demonstrating osteomyelitis, and the urgent removal of Mr. Lynn's right leg was neither indicated nor necessary and was a departure from the applicable standard of care." (JA 12, 17). X-ray and CT scans provided data consistent with Charcot's joint disease or osteomyelitis; Respondent did not perform a bone biopsy or any other pathology work prior to amputation. (JA 142). Further, according to Dr. Jacobs:

> The record reveals that Mr. Lynn definitely suffered from Charcot joint disease…When Mr. Lynn was seen in the ER on January 15, 2019, his CT suggested to the radiologist who interpreted it that he had osteomyelitis. Charcot joint disease and osteomyelitis are difficult to distinguish using radiographic images. The 'gold standard' for establishing a diagnosis of osteomyelitis is a bone biopsy. This was not performed. Nor do the operative report of January 17th or the resulting pathology report give any information to confirm the presence of osteomyelitis.

(JA 217-218).

Ultimately, Dr. Jacobs provides the minimal standard of care under these circumstances: "the proper course of treatment would have been first to confirm the diagnosis and then determine the extent of the infection." (JA 218). Dr. Jacobs also opines this standard was violated: "I have no explanation as to why that leg wasn't examined [by the Respondent] to establish the reason the leg was amputated. As you well know, there was no verification of any of these diagnoses." (JA 148). Dr. Jacobs also opined: "…there should have [been] some verification to say, yes, this is an

unsalvageable leg, which it doesn't sound like there was…" (JA 150). "The leg should have been opened first, the diagnosis confirmed or not confirmed, and then if the diagnosis were confirmed, you say, I'm sorry about this but the leg has to go. And that's my whole -- that's the basis of my criticism." (JA 167). According to Jacobs, by failing to confirm a diagnosis, the VA engaged in an unnecessary amputation, and thus proximately caused the Lynns' injuries. (JA 218).

Respondent attempted to rebut Dr. Jacobs' opinions with the testimony of Dr. Thomas E. Brothers (the treating physician) and three other expert witnesses. (JA 201-216). These opinions do not rebut Dr. Jacobs' opinions, as set forth in subsection A, *infra*. Ultimately, with the Lynns' burden of production met, unrebutted, it was the duty of the District Court to deny summary judgment and consider the parties' arguments at trial. The District Court instead hastily granted summary judgment for the Respondent, bottomed and premised on the substantial, prejudicial, and reversible errors set forth below.

**A.    The District Court improperly resolved a disputed material fact regarding the presence of necrotizing fasciitis in Keith Lynn's right leg.**

In granting Respondent summary judgment, the District Court found: "[Keith Lynn's] leg was amputated due to a life-threatening, necrotizing soft tissue infection—not osteomyelitis." (JA 240). The existence of this "life-threatening, necrotizing soft tissue infection [*i.e.*, necrotizing fasciitis]" is very much in dispute;

thus, the District Court's resolution of this disputed fact is reversible error. *See Sosebee*, 797 F.2d at 182 (a court must not resolve disputed facts in considering a motion for summary judgment). As discussed above, Dr. Jacobs opines that the VA amputated Keith Lynn's leg without having any diagnosis mandating such a drastic action, and certainly without having a diagnosis of necrotizing fasciitis.

While the Respondent presented the District Court with expert testimony or declarations supporting its position, all of these experts are adequately rebutted by Dr. Jacobs. Dr. Brothers, the surgeon ultimately responsible for Mr. Lynn's rushed amputation, stated in his deposition that Keith Lynn suffered from necrotizing fasciitis. (JA 148, 203). However, in Mr. Lynn's 9000+ pages of VA medical records, the phrase "necrotizing fasciitis" appeared one time: as a provisional diagnosis in a consultation request.  (JA 137, 148, 227-228). Dr. Jacobs' deposition testimony and November 18, 2022, declaration rebuts Dr. Brothers' testimony:

- Dr. Jacobs noted that Dr. Brothers' records state Keith Lynn suffered from osteomyelitis, not necrotizing fasciitis. (JA 147-154).

- "So I'm saying even if there was a true diagnosis of necrotizing fasciitis, because all we have is indirect presumptive evidence, that still does not mandate amputation of the limb, that you can salvage limbs with necrotizing fasciitis." (JA 175).

17

- "[T]here was never any diagnosis of necrotizing fasciitis or other immediately life- threatening infection." (JA 218).

- Most importantly: "Here, neither the operative report nor the pathology report indicate the presence of necrotic (dead) tissue." (JA 218).

Respondent also presented three other expert witnesses (Dr. John Womack, Dr. Mark R. Jackson, and Dr. Jan Fritz) to provide opinions on the treatment of Mr. Lynn. (JA 207-216). None of these experts had a role in the treatment of Mr. Lynn. Drs. Womack and Jackson opined Respondent did not deviate from an unspecified standard of care. (JA 208-211). All of these expert witnesses based their opinions at least partially upon the existence of gas in CT scans of Mr. Lynn's right leg. (JA 207, 210, 213-214). These witnesses' opinions are rebutted by Dr. Jacobs, who noted: "[f]inding air density on an x-ray or CT scan does not equal a diagnosis of gas gangrene or a necrotizing fascial infection." (JA 167). These witnesses' opinions also appear to assume the existence of necrotizing fasciitis, a condition, as set forth above, that the VA never diagnosed.[3]

---

[3] On May 15, 2023, Respondent submitted three additional reports by these experts, plus a report from expert witness Dr. Rick Delmonte. (JA 243-261). These later reports were submitted in response to the Lynns' motion to reconsider, and are thus not properly considered here. Even if they were properly before this Court, all of these reports suffer from the same defects as reports Respondent submitted on November 23, 2022, to wit: they misinterpret the significance of gas in Mr. Lynn's CT scans and they assume the existence of necrotizing fasciitis.

Even though Dr. Jacobs' opinions effectively rebutted the Respondents' evidence, as required by Rule 56, the District Court disregarded it. In order to do this, the District Court manufactured a "conflict" within Dr. Jacobs' testimony. (JA 240-241). According to the District Court: "Dr. Jacobs does not dispute this testimony stating he 'believed Dr. Brothers amputated the leg of Mr. Lynn to treat the necrotizing fasciitis[.]'" (JA 240-241). The District Court apparently based this finding on testimony from page 33 of Dr. Jacobs' deposition submitted by the Respondent. (JA 197). On page 34 of Dr. Jacobs' deposition, a reader would learn that Dr. Jacobs is merely testifying as to what he believed Dr. Brothers may have thought in the context of a differential diagnosis.[4] (JA 198). Not only did this testimony have no effect on Dr. Jacobs' opinions regarding the standard of care, its breach, and its causation, it constituted inadmissible speculation. *See* Fed. R. Evid. 602 (personal knowledge required); Fed. R. Civ. P. 56(c)(2) (evidence must be admissible).

### B.   The District Court made an impermissible determination of Dr. Jacobs' credibility.

On August 15, 2022, the District Court found that Dr. Jacobs was qualified as an expert to offer an opinion "that the medical evidence supports Mr. Lynn's diagnosis of Charcot joint disease and that the VA's providers departed from the

---

[4] Respondent omitted page 34 in its submission to the District Court. (JA 193-200).

standard of care in urgently removing Mr. Lynn's right leg when 'there was never any direct evidence demonstrating osteomyelitis.'" (JA 189-190). The District Court came to this decision aware of Dr. Jacobs' prior testimony that he "cannot testify to vascular surgery standards of care". (JA 188-189). A little over six months later, the District Court cited the <u>exact</u> <u>same</u> <u>testimony</u> to find Dr. Jacobs did not provide evidence of proximate cause, and consequently granted summary judgment for the Respondent. (JA 234).

Because the District Court's order granting summary judgment did not disqualify Dr. Jacobs as an expert witness, it again weighed his testimony, this time based on Dr. Jacobs' education and experience. This weighing of evidence is reversible error; issues with the amount and quality of education and experience of an expert go to the weight of the expert's testimony. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999); *see also Follmer v. Pro Sports, Inc.*, No. 2:22-cv-743-RMG, 2023 WL 3964029 (D.S.C. Order dated June 12, 2023); *Davis v. United States*, No. 5:10-cv-00384, 2011 WL 3882272 (S.D.W.Va. Order dated Sept. 2, 2011); *Lee v. Suess*, 318 S.C. 283, 457 S.E.2d 344, 348 (1995) (citing *State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993)). The fact that the hurried amputation of Mr. Lynn's leg was performed by a vascular surgeon does not preclude Dr. Jacobs from opining that Mr. Lynn's case should not have been so hastily presented to the surgeon. *See Creekmore v. Maryview Hosp.*, 662 F.3d 686,

691 (4th Cir. 2011) ("[T]he inquiry focuses on the expert's knowledge of, and experience with, the specific procedure at issue, not on the expert's professional qualifications relative to those of the defendant practitioner."); *Tripiciano v. Hale*, No. 7:13cv00254, 2014 WL 1653073 (W.D. Va. Order dated Apr. 23, 2014) ("[A]n expert needs no particular certification or formal title in order to testify as to the standard of care if he otherwise has the requisite qualifications and expertise [and can] testify as to procedures that overlap and are common to their specialty, such as whether or not to perform imaging studies or to make a referral."); *Gooding*, 326 S.C. at 487 S.E.2d 596 at 598 ("An expert is not limited to any class of persons acting professionally."); *Creed v. City of Columbia*, 310 S.C. 342, 345, 426 S.E.2d 785, 786 (1993) (A doctor need not practice in the particular area of medicine as the defendant doctor to be qualified to testify as an expert.).

The District Court's weighing of Dr. Jacobs' testimony is especially prejudicial to the Lynns because it took place before the Lynns were able to question, via cross-examination, the credibility of Respondent's experts at trial. The right to present one's case in a civil matter, even if by cross-examination, is recognized by the Supreme Court:

> …In this case petitioner may have had to prove her case by impeaching the store's witnesses and appealing to the jury to disbelieve all that they said was true in the affidavits. The right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases. The advantages of trial before a live jury with live

witnesses, and all the possibilities of considering the human factors, should not be eliminated by substituting trial by affidavit and the sterile bareness of summary judgment. "It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" *Poller v. Columbia Broadcasting*, 368 U. S. 464, 473 (1962).

*Adickes v. SH Kress & Co.*, 398 U.S. 144, 176 (1970).

Some of the subjects of the Lynns' cross-examination are apparent from the record:

- Dr. Brothers' testimony regarding the existence of necrotizing fasciitis developed after he amputated Mr. Lynn's leg and the Lynns complained.

- Dr. Brothers will testify that he examined Mr. Lynn's leg prior to amputation, but "the operative report did not include any description of [Dr. Brothers] doing so, and the pathology report identified no incisions that would have suggested that Dr. Brothers did indeed examine that leg prior to proceeding with the decision to perform an amputation." (JA 140, 205)

- Drs. Brothers, Womack, Jackson, and Fritz assume Mr. Lynn suffered from necrotizing fasciitis, but "… neither the operative report nor the pathology report indicate the presence of necrotic (dead) tissue." (JA 218).

There are other subjects of cross-examination, but these subjects are not readily apparent from the record and are matters of protected trial strategy. Considering the Lynns have met their burden to submit this matter to the trier of fact,

it is manifestly unfair that they should be forced to divulge them at the summary judgment stage and prejudice their case. *Cf. Adickes*, *supra*.

**C.    The District Court improperly determined the standard of care applicable in this lawsuit.**

The District Court's final reversible error in its summary judgment order was its finding that the applicable standard of care was that of a vascular surgeon. (JA 241-242). The standard of care is not a finding to be made at the summary judgment stage - under South Carolina law, the applicable standard of care is determined by the trier of fact. *See, e.g., McCourt v. Abernathy*, 318 S.C. 301, 457 S.E.2d 603, 606 (1995); *Brouwer v. Sisters of Charity Providence Hosps.*, 409 S.C. 514, 521, 763 S.E.2d 200, 203 (2014). On August 15, 2022, the District Court found that Dr. Jacobs was qualified as an expert to offer an opinion "that the medical evidence supports Mr. Lynn's diagnosis of Charcot joint disease and that the VA's providers departed from the standard of care in urgently removing Mr. Lynn's right leg when 'there was never any direct evidence demonstrating osteomyelitis.'" (JA 189-190). While the Respondent argues that the relevant standard is instead that of a vascular surgeon, this is not a decision to be made in summary judgment. It is, as set forth above, to be decided after scrutinizing the testimony of the witnesses, particularly after they have been cross-examined at trial.

II.     **The Lynns were prejudiced by Respondent's unauthorized *ex parte* communication to the District Court of its proposed findings of fact and conclusions of law.**

The District Court also committed reversible error, independent from the errors in its award of summary judgment, in its mishandling of the pre-trial proposed findings of fact and conclusions of law for this case. Two of the three Notices of Trial in this matter, issued on June 3 and July 25, 2022, contained a link to the following language regarding proposed findings and conclusions:

> PROPOSED FINDINGS AND CONCLUSIONS OF LAW. The parties are to submit proposed findings and conclusions of law via email to chambers at Dawson_Ecf@scd.uscourts.gov no later than five (5) business days prior to trial.

(JA 179, 181). The third Notice of Trial, issued on February 10, 2023, was a text order without any link to the above language. (JA 4). Nothing in these notices excused the parties' obligation under the District of South Carolina's local rules:

> Copies of proposed orders will be provided to all counsel of record at the same time and in the same manner as provided to the court; provided, however, that if the court requests proposed findings and conclusions to be submitted before trial, the court may postpone the required exchange until after trial.

Local Civ. Rule 7.10(B)(4) (D.S.C.). Further, no Notice of Trial postponed the required exchange, which was an option, if requested, under the local rule.

Accordingly, the "default" local rule applied to this case, and the parties' pre-trial proposed findings and conclusions were to be provided to all parties at the same time as they are provided to the District Court. Local Civ. Rule 7.10(B)(4) (D.S.C.).

The Respondent did not follow this rule when it submitted its pre-trial findings and conclusions – it instead sent them to the District Court *ex parte*.[5] Thus, the District Court had the opportunity to review Respondent's best arguments and evidence for well in advance of trial, but the Lynns were given no reciprocal notice.

This error is compounded by how the District Court handled the Respondent's findings and conclusions. It is well-settled *ex parte* communications with the court are prohibited. *See* Fed. Code of Jud. Conduct, Canon 3(A)(4)(a); Rule 3.5 cmt. 3, RPC, Rule 407, SCACR. However, it is equally well-settled that such communications can be appropriate if authorized by law. *Id.* The District Court cited Local Civil Rules 7.10 and 26.05 as the legal authorization for Respondent to submit its proposed findings and conclusions *ex parte*. (JA 288-289). Neither of these rules provide the necessary authorization. Nothing in the three Notices of Trial requires the postponement of the exchange of pretrial findings and conclusions pursuant to Local Rule 7.10(B)(4). Nothing in the three Notices of Trial requires the pretrial findings and conclusions be submitted with the pretrial brief (and thus for the sole use of the court), pursuant to Local Rule 26.05. On the contrary, two of the three Notices of Trial required pretrial briefs and pretrial findings and conclusions be submitted at separate times, and the third was silent on such matters.

---

[5] The Lynns did not submit pre-trial findings and conclusions.

With no legal authorization for *ex parte* communications, when the District Court discovered such communications it was required to "promptly notify the parties of the subject matter of the [unauthorized *ex parte*] communication and allow the parties an opportunity to respond, if requested." Fed. Code of Jud. Conduct, Canon 3(A)(4). The Lynns informed the District Court of the impropriety of Respondent's communication on December 1, 2022. (JA 219). The District Court granted summary judgment in favor of the Respondent on March 4, 2023, without addressing the Lynns' concern. (JA 231-242). The District Court finally ordered[6] the Respondent produce its proposed findings and conclusions on July 12, 2023, after it had granted summary judgment. (JA 5).

This error has prejudiced the Lynns. Respondent's *ex parte* communication took place no later than November 9, 2022.[7] (JA 181). In its November 14, 2022, order of continuance the District Court developed a concern regarding proximate cause and ordered briefing on that issue under Fed. R. Civ. P. 56(f). (JA 191-192). The proposed findings and conclusions Respondent communicated *ex parte* advanced a theory of non-liability bottomed and premised on the contentions that

---

[6] This text order was issued in response to arguments in the Lynns' May 2, 2023, motion to reconsider, <u>not</u> in response to the Lynns' December 1, 2022, notice to the District Court regarding the *ex parte* communication. (JA 5, 219).

[7] The record does not reflect the exact day, but the July 25, 2022, Notice Regarding Bench Trial required the proposed findings and conclusions be submitted no later than November 9, 2022. (JA 181).

expert testimony was necessary to establish proximate cause and Dr. Jacobs was not able to testify as to the standard of care for a vascular surgeon. (JA 275-276, 279-280, 285). The District Court granted summary judgment under Fed. R. Civ. P. 56(f) on strikingly similar grounds. (JA 240-242). The Respondent's proposed findings and conclusions also assumed the existence of, and cited repeatedly, a "necrotizing soft tissue infection" that is very much in dispute, and was a condition the District Court relied upon in its summary judgment order. (JA 240, 276, 278-280, 285). This is substantial circumstantial evidence of the use of (and prejudice from) Respondent's *ex parte* communication. *Cf. Fessler v. Int'l Bus. Mach. Corp.*, 959 F.3d 146, 155 (4th Cir. 2020) (Intent is most often proven by circumstantial evidence and reasonable inferences to be drawn from the facts.)

## CONCLUSION

The District Court should be reversed.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument, which she believes would significantly aid the decisional process, particularly on matters of South Carolina law.

Respectfully submitted,

Dated: 02/20/2024

/s/ Jason Scott Luck

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863
jason@luck.law

Paul E. Tinkler
William P. Tinkler
TINKLER LAW FIRM, LLC
P.O. Box 31813
Charleston, SC 29417
843.853.5203
paultinkler@tinklerlaw.com
williamtinkler@tinklerlaw.com

Stephen F. DeAntonio
DeANTONIO LAW FIRM, LLC
P.O. Box 30069
Charleston, SC 29417
843.577.8080
sdeantonio@deanlawfirm.com

*Counsel for Plaintiff-Appellant*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. __23-2103__      **Caption:** __Jennifer L. Beckett-Lynn v. USA__

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains ____6112____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac _____ [*identify word processing program*] in 14 pt Times New Roman _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) __Jason Scott Luck__

Party Name __Jennifer L. Beckett-Lynn__

Dated: __02/20/2024__

29